UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EUGENE DAVID M.,

                              Plaintiff,

v.                                                    5:21-CV-00529
                                                      (FJS/TWD)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                          OF COUNSEL:

OLINSKY LAW GROUP                     HOWARD D. OLINSKY, ESQ.
  *Counsel for Plaintiff*
250 South Clinton Street, Suite 210
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.           CHRISTOPHER LEWIS POTTER, ESQ.
  *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

**ORDER AND REPORT-RECOMMENDATION**

        Eugene David M. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying his application for Supplemental Security Income ("SSI").  (Dkt. No.

1.)  Plaintiff did not consent to the disposition of this case by a Magistrate Judge.  (Dkt. No. 7.)

Both parties filed briefs, which the Court treats as cross-motions for judgment on the pleadings

under Federal Rule of Civil Procedure Rule 12(c) in accordance with General Order 18.  (Dkt.

Nos. 14, 17.)  Oral argument was not heard.  For the reasons set forth below, the undersigned recommends the District Court deny Plaintiff's motion and affirm the Commissioner's decision denying Plaintiff's application.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on July 9, 1999.  (Administrative Transcript at 233.[1])  He is a high school graduate, who received special education services.  (T. 40-41.)  He has no prior employment and previously received childhood disability benefits.  (T. 15, 182-83.)  The childhood benefits ended following an Age 18 Disability Redetermination, which Plaintiff had originally requested be reopened.  (T. 15, 270.)  Plaintiff later withdrew the request to reopen that determination.  (T. 272.)

On June 3, 2019, Plaintiff protectively filed an application for SSI, alleging an onset date of September 7, 2011.  (T. 166-75.)  Plaintiff's application was initially denied on October 3, 2019, and his request for administrative reconsideration was denied on January 9, 2020.  (T. 90-95, 99-101.)  Thereafter, Plaintiff filed a written request for a hearing, and a telephonic hearing was held on July 31, 2020, before Administrative Law Judge ("ALJ") Robyn L. Hoffman.  (T. 31-57.)  Plaintiff's representative was at the hearing and Plaintiff testified.  *Id.*  On September 14, 2020, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 15-25.)  On March 5, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Plaintiff

---

[1]  The Administrative Transcript is found at Dkt. No. 9.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system.  Citations not made to the Administrative Transcript will use the page numbers assigned by the Court's CM/ECF electronic filing system.

then timely commenced this action on May 7, 2021.  (Dkt. No. 1.)

## II.    RELEVANT LEGAL STANDARDS

### A.    Standard for Benefits[2]

To be considered disabled, a plaintiff seeking disability benefits must establish he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  Under the five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or

_____

[2]  While the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

> equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove the plaintiff-claimant is capable of working. *Id.*

**B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set forth the crucial factors justifying his or her findings with sufficient specificity to allow a court to

determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence" is evidence amounting to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted). Where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). A reviewing court cannot substitute its interpretation of the administrative record in place of the Commissioner's if the record contains substantial support for the ALJ's decision. *Rutherford*, 685 F.2d at 62 (2d Cir. 1982).

### C.    Standards for ALJ Evaluation of Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[3] and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no

---

[3] Plaintiff's application was filed June 3, 2019. (T. 166-175.) Thus, the new regulations apply in his case.

longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017); *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" forming the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other

medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* §§ 404.1520c(b)(3), 416.920c(b)(3).

## III.   THE ALJ'S DECISION

In her September 14, 2020, decision, the ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. (T. 15-25.) First, she found Plaintiff had not engaged in substantial gainful activity. (T. 18.) The ALJ next determined Plaintiff has the following severe impairments: "epilepsy and a learning disorder." (T. 18.) She then determined Plaintiff does not have an impairment or combination of impairments meeting or medically equaling one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1 ("Listing(s)"). (T. 18-20.)

The ALJ then found Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations:

> He should avoid climbing ladders, ropes or scaffolds; working at unprotected heights; and working in close proximity to dangerous machinery or moving mechanical parts of equipment. The claimant retains the ability to understand and follow simple instructions and directions; perform simple tasks independently; maintain attention and concentration for simple tasks; regularly attend to a routine and maintain a schedule; and relate to and interact appropriately with all others to the extent necessary to carry out simple tasks. The claimant can handle simple, repetitive,

> work-related stress in that he can make occasional decisions,
> directly related to the performance of simple tasks, in a position
> with consistent job duties, that does not require him to supervise or
> manage the work of others.

(T. 20.)  The ALJ found Plaintiff did not have any past relevant work and, based upon the RFC

and the Medical-Vocational Guidelines, 20 C.F.R. § 404, Subpt. P, App. 2, the ALJ determined

Plaintiff could perform jobs existing in significant numbers in the national economy.  (T. 23-25.)

Thus, the ALJ determined Plaintiff has not been under a disability, as defined in the Social

Security Act, from June 3, 2019, through the date of the ALJ's decision.  (T. 25.)

## IV.    THE PARTIES' CONTENTIONS

Plaintiff asserts the ALJ erred (1) in assessing the opinion of consultative psychiatric

examiner, Corey Anne Grassl, Psy.D.; (2) in finding Plaintiff's learning disorder did not meet

Listing 12.11; and (3) in failing to consult a vocational expert ("VE").  (Dkt. No. 14.)  In

response, the Commissioner contends the ALJ's decision denying disability benefits applies the

correct legal standards and is supported by substantial evidence.  (Dkt. No. 17.)

## V.    THE COURT'S ANALYSIS

More specifically, Plaintiff argues he should be considered disabled in light of his

learning disorder coupled with his seizure disorder.  (Dkt. No. 14.)  He primarily contends the

ALJ's decision is not supported by substantial evidence because she erred in assessing the

opinion of Dr. Grassl by finding it only somewhat persuasive.  *Id.* at 13-20.  Plaintiff also argues

his condition met Listing 12.11 which includes Neurodevelopmental Disorders because he has

met the criteria of both paragraphs A and B of that Listing.  *Id.* at 20-22; 20 C.F. R. Part 404,

Subpt. P, App. 1 § 12.11.  Finally, Plaintiff asserts the ALJ should have consulted a VE because

his "exertional and nonexertional impairments and limitations" required her to obtain such an

opinion.  *Id.* at 22.  For the reasons set forth below, the Court disagrees and finds the ALJ

applied the correct legal standards, and her decision is supported by substantial evidence.

### A.    Substantial Evidence Supports the Commissioner's RFC Determination

### 1.    Legal Standards

A claimant's RFC is the most he or she can do despite his or her limitations.  20 C.F.R.

§§ 404.1545(a)(1), 416.945(a)(1).  "Ordinarily, RFC is the individual's maximum remaining

ability to do sustained work activities in an ordinary work setting on a regular and continuing

basis.  A regular and continuing basis means eight hours a day, for five days a week, or an

equivalent work schedule."  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)).  "In making a residual functional capacity

determination, the ALJ must consider a claimant's physical abilities, mental abilities,

symptomology, including pain and other limitations which could interfere with work activities

on a regular and continuing basis."  *Id*. (citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny

impairment-related limitations created by an individual's response to demands of work . . . must

be reflected in the RFC assessment.'"  *Hendrickson v. Astrue*, No. 11-CV-0927 (ESH), 2012 WL

7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8).  The

RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide

whether the determination is supported by substantial evidence."  *Ferraris*, 728 F.2d at 587.

### 2.    Application

As noted above, the ALJ found Plaintiff could perform a full range of work at all

exertional levels.  (T. 20.)  Plaintiff apparently does not assert any error in this regard.  (Dkt. No.

14.)  In fully determining Plaintiff's RFC, the ALJ set forth several nonexertional limitations.

(T. 20.)  In this regard, however, Plaintiff argues the RFC is not supported by substantial

evidence because she assessed the opinion of the Agency's psychiatric consultative examiner, Dr. Grassl, only somewhat persuasive. (Dkt. No. 14 at 13-20.)

In evaluating potential limitations imposed by Plaintiff's mental impairments, the ALJ considered the opinions of consultative examiner Dr. Grassl, as well as state agency consultants Jed Weitzen, Ph.D., and Laura Haus, Psy.D. (T. 19-20, 23, 66-71, 81-87, 353-356.) Although no mental health treating source opinion was available, the ALJ reviewed Plaintiff's treatment notes in detail, as well as Plaintiff's school records. (T. 21-23.)

During her September 27, 2019, consultative examination, Dr. Grassl found Plaintiff to have a cooperative demeanor with an adequate manner of relating; he was appropriately dressed and well groomed, and had good eye contact. (T. 354.) He demonstrated coherent and goal-directed thought processes with no evidence of delusions, hallucinations, or paranoia. *Id.* His attention and concentration were impaired due to a learning disability in math, and he showed impaired memory skills due to seizure disorder. *Id.* His intellectual functioning was estimated to be borderline, with a somewhat limited general fund of information. *Id.* He socialized with friends, was close with his family, and could dress, bathe, and groom himself. (T. 355.) Based on her examination, Dr. Grassl opined Plaintiff had the following limitations:

> Is mildly limited in his ability to understand, remember, and apply
> simple directions and instructions; markedly limited in his ability
> to understand, remember, and apply complex directions and
> instructions, sustain concentration and perform a task at a
> consistent pace, sustain an ordinary routine and regular attendance
> at work; moderately limited in his ability to use reason and
> judgment to make work-related decisions. No evidence of
> limitation in his ability to interact adequately with supervisors, co-
> workers, and the public, regulate emotions, control behavior, and
> maintain well-being, maintain personal hygiene and appropriate
> attire, or be aware of normal hazards and take appropriate
> precautions. Difficulties are caused by cognitive deficits.

10

*Id.* Dr. Grassl opined the examination results were "[c]onsistent with cognitive problems, and this may significantly interfere with the claimant's ability to function on a daily basis." *Id.*

The ALJ found Dr. Grassl's overall opinion "somewhat persuasive" as it was consistent with her examination results. (T. 23.) However, the ALJ did not adopt the marked restrictions Dr. Grassl described because the overall record did not support those marked mental limitations in Plaintiff's work functioning. *Id.* While the ALJ acknowledged Plaintiff's school records demonstrated some learning difficulties, Plaintiff had not required any mental health treatment, and other records showed he exhibited a normal mood, affect, and behavior; and the Plaintiff himself also denied a wide range of symptoms. (T. 23; *see also* T. 185-212, 277-86, 289, 302, 334-35, 339-40, 345, 350-51, 353.)

Dr. Weitzen and Dr. Haus had complete access to the overall record, and the ALJ found their opinions to be more persuasive, even though neither consultant examined Plaintiff. (T. 23.) Dr. Weitzen opined Plaintiff had "moderate" limitations in his ability to carry out, understand and remember detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule; to maintain regular attendance, and be punctual within customary tolerances; to complete a normal workday and workweek without interruption from psychologically based symptoms; to respond appropriately to changes in the work setting; and to travel in unfamiliar places or use public transportation. (T. 69-71.) Dr. Weitzen opined Plaintiff was not significantly limited in all other workplace functions. *Id.* Based on all the evidence in the record, Dr. Weitzen ultimately opined Plaintiff retained the ability to perform the basic mental demands of unskilled work. (T. 71.) He noted school records and other medical evidence did not support the marked findings opined by Dr. Grassl. *Id.*

11

Following Plaintiff's request for reconsideration, (T. 99-101), Dr. Haus reviewed all record evidence including the documentation describing Plaintiff's mental abilities, ultimately found those abilities largely unchanged, and agreed with Dr. Weitzen's opinion that Plaintiff could meet the mental demands of simple work.  (T. 82-87.)

Courts have long recognized an ALJ has discretion to rely on a non-examining medical consultant's opinion.  *See Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("An ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability."); *Byrne v. Berryhill*, 284 F. Supp. 3d 250, 260 (E.D.N.Y. 2018) ("Non-examining medical consultants . . . may provide opinions, which constitute substantial evidence."); *see Leach v. Barnhart*, No. 02-CV-3561, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").  Here, the ALJ relied upon the opinions from Dr. Weitzen and Dr. Haus only after evaluating their supportability and consistency with Plaintiff's school and treatment records.

As part of his evaluation of these two opinions, the ALJ reviewed Plaintiff's history of seizures, and his school records.  (T. 18-20, 21-23, 185-212, 277-86, 287-309, 314-29, 331-52, 358-64.)  Most relevant to Plaintiff's mental abilities, and the ALJ's finding that Dr. Grassl's opinion was only somewhat persuasive, the ALJ reviewed and relied upon records associated with Plaintiff's education and the triennial evaluation report of November 28, 2017, completed by the school psychologist and the special education teacher.  (T. 21-22, 277-86.)  Per the school records, he had a full-scale IQ of 80 and his overall intelligence is classified as "Low Average."

(T. 279.)  School records also demonstrate Plaintiff participated in vocational training in the field

of automotive technology, and he stated he wanted to be a mechanic after graduation.  (T. 191,

203, 278.)  He needed assistance in English Language Arts (reading and writing) and

Quantitative Reasoning (mathematics).  (T. 280-85.)  However, he could utilize voice dictation

and texting.  (T. 190, 191, 201, 285.)  He was considered "a good auditory learner," and liked

"real world examples and practical work."  (189, 201.)  He needed large tasks broken down and

extra time on large projects, but could do "hands on" tasks.  (T. 190, 202, 286.)  He did not have

any behavioral problems and socialized with a small group of friends.  (T. 189, 190, 202, 286.)

The ALJ also relied on medical records which showed him to be alert, attentive, fully

oriented, and exhibiting normal behavior.  (T. 294, 302, 339-340, 350-351.)  He denied

confusion and reported to providers that he socialized with friends.  (T. 228, 339, 344-45, 355.)

Thus, Plaintiff's argument that the ALJ improperly evaluated Dr. Grassl's opinion is

without merit.  (Dkt. No. 14 at 13-20.)  As noted above and in accordance with the regulations,

the ALJ was required to explain how she considered the supportability and consistency factors

for a medical source's opinions or prior administrative medical findings in the decision.  20

C.F.R. § 416.920c(b)(2).  The ALJ did that here.  Relatedly, the ALJ did not ignore or "cherry-

pick" evidence that supported her decision.  (Dkt. No. 14 at 17.)  Rather, the ALJ properly

carried out her responsibility to "review[] all of the medical and other evidence before [her],

resolving any inconsistencies therein, and making a determination consistent with the evidence

as a whole." *Katherine Marie S. v. Comm'r of Soc. Sec.*, No. 18-00233, 2019 WL 1427456, at

*8 (N.D.N.Y. Mar. 29, 2019).  As explained above, the ALJ properly considered the evidence in

accordance with the regulations, and she reasonably relied on the assessments of Drs. Weitzen

and Haus and the overall record.  *See Christina M. v. Saul*, No. 18-0332, 2019 WL 3321891, at

*6 (N.D.N.Y. July 24, 2019) (explaining that it is "within the ALJ's purview to rely on the opinion" of a state agency physician who reviewed the evidence).  Where, as here, the ALJ discussed evidence favored by the Plaintiff in addition to evidence supporting the RFC, a suggestion of "cherry-picking" is unavailing.  (T. 18-23.)  Indeed, "an ALJ does not have to state on the record every reason justifying a decision . . . [and] is not required to discuss every piece of evidence submitted.  An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered."  *Brault v. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citations and internal quotation marks omitted).

As Plaintiff highlights in his brief, there is evidence Plaintiff had a learning disorder that caused him to have limitations in his mental functioning, and Dr. Grassl assigned some marked restrictions related to his mental abilities.  (Dkt. No. 14 at 17-20, T. 277-86, 355.)  However, Dr. Weitzen and Dr. Haus found, based upon the entirety of the record evidence, that Plaintiff was not significantly limited in the ability to carry out simple, short instructions; to remember locations and work-like procedures; to sustain an ordinary routine without special supervision; and he could make simple work-related decisions and work in close proximity to others without being distracted by them.  (T. 69-70, 84-85.)  These opinions are supported by and consistent with the school records outlined above, and medical records of Plaintiff's treatment providers. (T. 189-91, 201-03, 228, 278, 280-86, 294, 302, 339-40, 350-51, 344-45, 355.)

Moreover, Plaintiff's providers who treated his epilepsy, resident physician Sherif Elwan, MBBCH, and Dr. Laura Simeonescu, noted they were aware Plaintiff had a "history of learning disability," but they did not describe any other limitations related to it.  (T. 369; *see also* T. 359-363.)  As the Commissioner points out, "[i]t is within the ALJ's province to give different weights to different conclusions within an opinion" and that is not impermissible "cherry

picking." (Dkt. No. 17 at 9.) "Genuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino v. Barnhard*, 312 F.3d 578, 588 (2d Cir. 2002).

As a general matter, the Court also notes moderate limitations, as found by Dr. Weitzen and Dr. Haus, are not an impediment to the ability to perform gainful activity, particularly when an RFC has already limited a claimant to unskilled, routine work. *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010); *Melisa G. v. Berryhill*, No. 3:18-CV-508 (DJS), 2019 WL 2502726, at *5 (N.D.N.Y. June 17, 2019) (holding "moderate limitations are not prohibitive of performing unskilled work."). Thus, the ALJ identified substantial evidence to reasonably conclude Plaintiff's mental impairments did not prevent him from working in unskilled positions consisting of simple and routine tasks and occasional social interaction. (T. 20.)

In sum, it is not for the Court to reweigh the evidence, as Plaintiff urges. *See Cruz o/b/o M.M.W. v. Comm'r of Soc. Sec.*, No. 19-CV-9253, 2021 WL 4123969, at *13 (S.D.N.Y. Aug. 25, 2021) ("However, the reviewing court's task is limited to determining whether substantial evidence exists to support the ALJ's fact-finding; it may not reweigh that evidence or substitute its judgment for that of the ALJ where the evidence is susceptible of more than one interpretation."), *report-recommendation adopted sub nom. Cruz v. Comm'r of Soc. Sec.*, 2021 WL 4124225 (S.D.N.Y. Sept. 9, 2021).

Accordingly, the ALJ relied upon substantial evidence to support her RFC determination related to Plaintiff's mental impairments, and there is no basis for remand regarding this determination.

**B.      Substantial Evidence Supports the Commissioner's Step Three Determination**

**1.      Legal Standards**

Plaintiff has the burden of proof at step three to show his impairments meet or medically

equal a Listing.  *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009) (citing *Naegele*

*v. Barnhart*, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006)).  "To meet a Listing, Plaintiff must

show that [his] medically determinable impairment satisfies all of the specified criteria in a

Listing."  *Id.* at 272 (citing 20 C.F.R. § 404.1525(d)).  "If a claimant's impairment 'manifests

only some of those criteria, no matter how severely,' such impairment does not qualify."  *Id.*

(quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).  Additionally, even where there is no

express rationale for finding an impairment does not meet a Listing, a court may uphold the

ALJ's decision if the determination is supported by substantial evidence.  *Id.* at 273 (citing *Berry*

*v. Schweiker,* 675 F.2d 464, 468 (2d Cir. 1982)).

**2.      Application**

Here, the ALJ found Plaintiff did not have an impairment or combination of impairments

meeting or medically equaling the severity of a listed impairment, particularly considering

Listing 11.02 (epilepsy), or near Listings under 11.00 (neurological disorders), and Listing 12.11

or near Listings (neurodevelopmental disorders).  (T. 18-20.)  Plaintiff does not dispute he does

not meet any Listing under the neurological disorders, but he does argue his learning disorder

meets Listing 12.11.  (Dkt. No. 14 at 20-22.)

As part of her step three analysis, the ALJ reviewed the criteria for each of the relevant

Listings and then compared each Listing to the symptoms described in Plaintiff's treatment

history and testimony.  (T. 18-20.)  A plaintiff who meets or equals a Listing is "conclusively

presumed to be disabled and entitled to benefits."  *Dixon v. Shalala*, 54 F.3d 1019, 1022 (2d Cir.

1995).  As noted above, "[f]or a claimant to show that his impairment matches a listing, it must

meet *all* of the specified medical criteria.  An impairment that manifests only some of those

criteria, no matter how severely, does not qualify."  *Sullivan*, 493 U.S. at 530 (emphasis in

original).

      To meet Listing 12.11, Plaintiff must meet the criteria set forth in both paragraphs A and

B of that listing.  20 C.F.R. Part 404, Subpt. P, App. 1 § 12.11.  Paragraph B directs a finding of

disability where the mental impairments result in at least one extreme or two marked limitations

in four broad areas of functioning, including (1) understanding, remembering, or applying

information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and

(4) adapting or managing himself.  *Id.*  Plaintiff argues he met the requirements of paragraph B

of Listing 12.11 because Dr. Grassl indicated Plaintiff had marked limitations in the areas of

understanding, remembering, or applying information; and in concentrating, persisting, or

maintaining pace.  (Dkt. No. 14 at 22; T. 355.)  The Court disagrees.

      As set forth above, in Section V.A.2., the ALJ properly found Dr. Grassl's opinion only

somewhat persuasive.  Accordingly, substantial evidence in the record supports the

determination that Plaintiff has only moderate or less limitations in these areas of mental

functioning.  For example, the ALJ relied on Plaintiff's own statements that he can follow

spoken instructions.  (T. 19, 226.)  He was cooperative, appropriately dressed, well groomed, had

an adequate manner of relating, and made appropriate eye contact when he was examined by Dr.

Grassl.  (T. 354.)  The record shows he did not have difficulties with behavioral problems,

confusion, agitation, anxiety, or decreased concentration, and he denied such difficulties.  (T.

190, 202, 339-40, 345.)  He reported being able to dress, bathe, and groom himself; he could do

microwave cooking, light cleaning, some shopping, and he used a smartphone.  (T. 230-32, 285.)
He socialized with friends.  (T. 189, 202, 228, 286, 355.)

The ALJ also relied on the opinions of Agency reviewers, including Dr. Weitzen and Dr.
Haus, in determining that Plaintiff did not meet Listing 12.11.  (T. 19.)  After reviewing the
entire record, Dr. Weitzen and Dr. Haus each found Plaintiff had mild limitations in
understanding, remembering, and applying information; no limitations in interacting with others;
and moderate limitations in concentration, persistence, or maintaining pace; and moderate
limitations in adapting or managing oneself.  (T. 66, 81.)  Therefore, substantial evidence
supports the ALJ's determination that Plaintiff did not meet the Paragraph B criteria of Listing
12.11.  Additionally, Plaintiff did not address the opinions of Drs. Weitzen and Haus regarding
Listing 12.11 and is once again essentially requesting that the Court reweigh the evidence, which
it cannot do.  *Cruz*, 2021 WL 4124225, at *13.

Accordingly, the ALJ's thorough analysis and explanation of Plaintiff's limitations at
step three indicate sufficient consideration of his impairments in relation to the Listings, and the
ALJ's findings are thus supported by substantial evidence.  As such, remand is not required on
this basis.

**C.     Substantial Evidence Supports the Commissioner's Step Five Determination**

**1.     Legal Standards**

Generally, the Commissioner meets her burden at the fifth step by resorting to the
applicable Medical-Vocational Guidelines commonly known as the grids.  *Rosa v. Callahan*, 168
F.3d 72, 78 (2d Cir. 1999) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2).  The grids take into
account a claimant's RFC in conjunction with the claimant's age, education, and work

18

experience. *Id.* "Based on these considerations the grids indicate whether the claimant can engage in any substantial gainful work existing in the national economy." *Id.*

Where a claimant can demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner at step five to prove that a job exists in the national economy which the claimant can perform. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); 20 C.F.R. §§ 404.1560(c), 416.960(c). Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions in the country. 20 C.F.R. §§ 404.1566(a), 416.966(a). In making this determination, the ALJ may apply the grids or consult a VE. *See Rosa*, 168 F.3d at 78; 20 C.F.R. Pt. 404, Subpt. P, App. 2. If the claimant's characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he or she is disabled. *Pratts v. Chater*, 94 F.3d 34, 38-39 (2d Cir. 1996).

However, if a claimant suffers from nonexertional impairments that "significantly limit the range of work permitted by exertional limitations," the ALJ should elicit testimony from a VE to determine if jobs exist in the economy that the claimant can still perform. *Id.* at 39 (quoting *Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986)); 20 C.F.R. §§ 404.1566(e), 416.966(e); *see also Zabala*, 595 F.3d at 410 (citing *Bapp*, 802 F.2d at 605). The VE may testify as to the existence of jobs in the national economy, and as to the claimant's ability to perform any of those jobs, given his functional limitations. *See Colon v. Comm'r of Soc. Sec.*, No. 6:00-CV-0556 (GLS), 2004 WL 1144059, at *6 (N.D.N.Y. Mar. 22, 2004). A nonexertional limitation is one imposed by the claimant's impairments that affect his ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments such as pain. *Rosa*, 168 F.3d at 78 n.2 (citing *Soblewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y.

1997)); 20 C.F.R. §§ 404.1569a(c), 416.969a(c). This is where the nonexertional impairment has more than a negligible impact on a claimant's ability to perform the full range of work. *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) (citing *Zabala*, 595 F.3d at 411).

An impairment is not negligible when it so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity. *Id.* (finding the ALJ erred by not determining whether claimant's reaching limitation was negligible or precluded reliance on the grids). Nonetheless, the existence of nonexertional limitations does not automatically preclude reliance on the grids, or require that the ALJ consult a VE. *Zabala*, 595 F.3d at 411. Where the claimant's nonexertional limitations did not result in an additional loss of work capacity, an ALJ's use of the grids is permissible. *Id.*

### 2.    Application

Plaintiff argues the ALJ erred at step five because she did not call a VE "[i]n light of Claimant's exertional and nonexertional impairments and limitations." (Dkt. No. 14 at 22.) Without providing any legal support, Plaintiff reasons that because the RFC limits him to simple work, these nonexertional impairments "[s]ignificantly limit the range of work permitted by his exertional limitations." *Id.* at 23. The Court finds no merit in this assertion.

Initially, the Court notes the ALJ found Plaintiff had the RFC "[t]o perform a full range of work at all exertional levels" but with the nonexertional limitations related to simple work due to his learning disorder; and not climbing ropes, ladders, or scaffolds, and not working at unprotected heights or with dangerous machinery or moving mechanical parts due to his epilepsy. (T. 20-23.) Citing SSR 85-15, 1985 WL 56857, the ALJ noted limits on climbing of ladders, ropes, and scaffolds or not working around heights or dangerous machinery are not significant at any exertional level. (T. 24.) The ALJ also found Plaintiff's nonexertional mental

limitations did not significantly limit his ability to perform, on a sustained basis, the basic mental demands of unskilled work since he retained the ability to "understand and follow simple instructions and directions, perform simple tasks independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, and relate to and interact appropriately with all others to the extent necessary to carry out simple tasks." (T. 24, citing SSR 85-15.)

There is substantial evidence to support these findings based upon this Court's prior conclusions above with respect to the ALJ's RFC determination, and the findings permitted the ALJ to proceed to step five without input from a VE. *See Zabala*, 595 F.3d at 410-11 (use of the grids permitted where plaintiff's mental condition did not limit her ability to perform unskilled simple work); *Delossantos v. Comm'r of Soc. Sec.*, No. 7:16-CV0713-GTS, 2017 WL 4011265, at *9 (N.D.N.Y. Sept. 11, 2017) (ALJ who found plaintiff remained able to perform the basic mental demands of unskilled work, as noted in the SSR 85-15 definition of basic mental demands required for the performance of unskilled work, was not required to consult VE).

Accordingly, since the ALJ properly concluded that Plaintiff's ability to perform simple work at all exertional levels was not significantly reduced by his mental impairments or the limitations not to climb or work around heights or dangerous machinery related to his epilepsy, the ALJ properly found there were a significant number of jobs in the national economy that Plaintiff could perform, using the grids as a framework, and the testimony of a VE was not required. Thus, remand is not warranted on this basis.

**WHEREFORE**, based upon the foregoing, it is hereby

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) be **<u>DENIED</u>**; and it is further

21

**RECOMMENDED** that Defendant's motion for judgment on the pleadings (Dkt. No. 17) be **GRANTED**; and it is further

**RECOMMENDED** that the Commissioner's decision denying Plaintiff disability benefits be **AFFIRMED**; and it is further

**ORDERED** that the Clerk of the Court serve copies of this Report-Recommendation on the parties in accordance with the Local Rules.  Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated:  September 29, 2022
         Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

22