UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EUGENE D. M.,

                                        **Plaintiff,**

        v.                                                      **5:21-CV-529**
                                                                **(FJS/TWD)**

COMMISSIONER OF SOCIAL SECURITY,

                                        **Defendant.**
_____

APPEARANCES                                OF COUNSEL

**OLINSKY LAW GROUP**                       **HOWARD D. OLINSKY, ESQ.**
250 South Clinton Street
Suite 210
Syracuse, New York 13202
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**          **CHRISTOPHER L. POTTER, SAUSA**
**OFFICE OF THE GENERAL COUNSEL**           **FERGUS J. KAISER, SAUSA**
6401 Security Boulevard
Baltimore, Maryland 21235
Attorneys for Defendant

**SCULLIN, Senior Judge**


**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

        Plaintiff Eugene D. M. brought this action pursuant to the Social Security Act, 42 U.S.C.

§ 405(g) (the "Act"), seeking judicial review of a final decision of the Commissioner of Social

Security (the "Commissioner"), denying his application for benefits.  *See generally* Dkt. Nos. 1,

14.  The Court referred the matter to Magistrate Judge Dancks for a Report-Recommendation.

*See* Dkt. No. 8.  After reviewing the parties' briefs, *see* Dkt. Nos. 14, 17, and the Administrative

Record ("AR"), *see* Dkt. No. 9, Magistrate Judge Dancks issued a Report-Recommendation, in which she recommended that the Court deny Plaintiff's motion for judgment on the pleadings, *see* Dkt. No. 14, and grant Defendant's motion for judgment on the pleadings, *see* Dkt. No. 17. *See* Dkt. No. 18, Report-Recommendation.  Plaintiff filed an objection to Magistrate Judge Dancks's recommendations, *see* Dkt. No. 19, to which Defendant responded, *see* Dkt. No. 20.


## II. STANDARD OF REVIEW

The Court reviews *de novo* those portions of a magistrate judge's findings and recommendations to which a party has specifically objected.  *See Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C).  "'A proper objection is one that identifies the specific portions of the [Report-Recommendation] that the objector asserts are erroneous and provides a basis for this assertion.'"  *Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 296 (E.D.N.Y. 2013) (quotation omitted).  Properly raised objections "must be specific and clearly aimed at particular findings" in the report.  *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009) (citation omitted).  A court reviews for clear error findings and recommendations as to which there are no properly preserved objections.  *See id.*  Likewise, to the extent that a party asserts "'merely perfunctory responses,' argued in an attempt to 'engage the district court in a rehashing of the same arguments'" set forth in the original submissions, the Court reviews them only for clear error.  *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (quotations omitted).

## III. DISCUSSION

In his objection, Plaintiff argues that Administrative Law Judge Robyn Hoffman (the "ALJ") did not properly evaluate the opinion of psychological consultative examiner Corey Anne Grassl, Psy.D., because she "cherry-picked" evidence favorable to her ultimate decision, and Magistrate Judge Dancks erroneously rationalized "the ALJ's shoddy analysis by citing to some evidence she believes provides support for the ALJ's conclusions."  *See* Dkt. No. 19, Pl's Objections, at 1-2.

Under the applicable regulations, the Commissioner must consider medical opinions and "evaluate the[ir] persuasiveness" based on the following five factors: supportability, consistency, relationship with the claimant, specialization, and 'other factors'"  20 C.F.R. § 416.920c(a)-(c).  The ALJ is required to "articulate how [she] considered the medical opinions" and "how persuasive [she] find[s] all of the medical opinions."  20 C.F.R. § 416.920c(a), (b)(1).  The two "most important factors" for determining the persuasiveness of medical opinions are consistency and supportability, and an ALJ is required to "explain how [she] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. § 416.920c(b)(2).

With regard to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(1).  The regulations provide that, with regard to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence

from other medical sources and nonmedical sources in the claim, the more persuasive the

medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R.

§ 416.920c(c)(2). An ALJ must consider, but is not required to discuss, the three remaining

factors when determining the persuasiveness of a medical source's opinion. 20 C.F.R.

§ 416.920c(b)(2).

Additionally, courts in this District and within the Second Circuit have repeatedly held

that an ALJ is "not required to discuss every piece of evidence in order to show that it had been

considered, nor does the ALJ's failure to provide a more detailed discussion of the evidence

prevent meaningful review of [her] findings[.]" *Sharon A.H. v. Comm'r of Soc. Sec.*, No. 5:20-

CV-1014 (BKS/DEP), 2022 WL 3141718, *7 (N.D.N.Y. Apr. 22, 2022) (Peebles, M.J.) (citing

*Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (noting that "an ALJ is

not required to discuss every piece of evidence submitted," and that "[a]n ALJ's failure to cite

specific evidence does not indicate that such evidence was not considered"), *adopted by* 2022

WL 2865971 (N.D.N.Y. July 21, 2022) (Sannes, J.); *LaRock ex rel. M.K. v. Astrue*, 10-CV-

1019 (NAM/VEB), 2011 WL 1882292, *6 (N.D.N.Y. Apr. 29, 2011) (Bianchini, M.J.)

(discussing that "there is no obligation for the ALJ to discuss every piece of evidence contained

in the record, so long [as] 'the evidence of record permits [the Court] to glean the rationale of an

ALJ's decision'" (quotation omitted)), *adopted by* 2011 WL 1883045 (N.D.N.Y. May 17, 2011)

(Mordue, C.J.).

In her decision, the ALJ addressed Dr. Grassl's opinion both at Step Three and at Step

Four. *See* AR at 23, 27. At Step Three, the ALJ noted that Plaintiff reported to Dr. Grassl that

he had a high school diploma with a special education background. *See id.* at 23. The ALJ

remarked that Dr. Grassl estimated Plaintiff's intellectual functioning to be "in the borderline

range" and found his memory skills to be "somewhat impaired." *See id.* She noted that Plaintiff reported that he could follow spoken instructions, but he denied difficulties with confusion. *See id.* The ALJ indicated that Dr. Grassl recorded Plaintiff's "flat affect," but she observed him to be appropriately dressed and well groomed. *See id.* According to the ALJ, Dr. Grassl described Plaintiff as cooperative, with an adequate manner of relating, appropriate eye contact, normal motor behavior, and fluent and clear speech. *See id.* The ALJ acknowledged that Dr. Grassl also found Plaintiff's attention and concentration to be "impaired." *See id.* The ALJ noted that, according to Dr. Grassl, Plaintiff could count to 20, but he struggled with simple calculations, serial threes, and serial seven tests. *See id.* When looking at the record as a whole, the ALJ found that Plaintiff sometimes reported difficulty completing tasks, but at other times he denied concentration difficulties. *See id.* (citing Ex. B6F, pp. 10-11; Ex. B7F, p. 1). The ALJ thus concluded that Plaintiff's reports were inconsistent, and he had no more than "moderate limitations" in his attention and concentration. *See id.* at 22-23.

To further support her finding of mild or moderate limitations, the ALJ pointed to Plaintiff's reported activities of daily living, which illustrated "a substantial ability to care for himself"; and she relied on assessments from state agency medical consultants Bipinchandra Patel, M.D., Jed Weitzen, Ph.D., Sheela Padmaraju, M.D., and Laura Haus, Psy.D. *See id.* Considering all of this evidence, the ALJ concluded that Plaintiff did not have "marked" or "extreme" limitations, and the "paragraph B" criteria were not satisfied. *See id.*

At Step Four, the ALJ repeated that Dr. Grassl estimated that Plaintiff's intellectual abilities were in the "borderline range" and found his memory and concentration to be impaired. *See id.* at 27. The ALJ also remarked that Dr. Grassl described Plaintiff's judgment as "poor." *See id.* The ALJ noted that Dr. Grassl opined that Plaintiff was "markedly limited" in multiple

- 5 -

areas, including his ability to understand instructions, sustain concentration and pace, and maintain ordinary workplace attendance. *See id.* The ALJ also noted that Dr. Grassl identified lesser restrictions pertaining to Plaintiff's ability to make work-related decisions. *See id.* The ALJ ultimately found Dr. Grassl's opinion to be "somewhat persuasive," as it was "consistent with her examination results," but she only examined Plaintiff a single time. *See id.* Additionally, the ALJ remarked that the "overall record" did not support marked-level limitations in any area of work-related mental functioning. *See id.* The ALJ noted that Plaintiff's school records convincingly demonstrated some learning difficulties, but Plaintiff had not required any mental health treatment during the period at issue. *See id.* Additionally, the ALJ pointed out that Plaintiff displayed normal mood, affect, and behavior in various examinations throughout the record, and he "denied a wide range of symptoms." *See id.* Thus, the ALJ did not adopt the marked restrictions that Dr. Grassl described. *See id.*

In coming to her determination on Plaintiff's residual functional capacity ("RFC"), in addition to finding Dr. Grassl's opinion to be "somewhat persuasive," the ALJ relied on Plaintiff's subjective complaints of symptoms, activities of daily living, school records, treatment records, and findings from consultative internist Kalyani Ganesh, M.D., Dr. Patel, Dr. Padmaraju, Laura E. Simionescu, M.D., Sherif A. Elwan, M.B.B.C.H., and Robert L. Beach, M.D., who all generally agreed as to Plaintiff's physical functioning, and whose opinions the ALJ found "fully persuasive." *See id.* at 24-25. Furthermore, with respect to Plaintiff's mental abilities, the ALJ relied on Drs. Weitzen's and Haus's "persuasive depictions" of Plaintiff's functioning. *See id.* at 27. Taking all of those findings in the record into account, the ALJ found that Plaintiff had an RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:

He should avoid climbing ladders, ropes or scaffolds; working at unprotected heights; and working in close proximity to dangerous machinery or moving mechanical parts of equipment.  [Plaintiff] retains the ability to understand and follow simple instructions and directions; perform simple tasks independently; maintain attention and concentration for simple tasks; regularly attend to a routine and maintain a schedule; and relate to and interact appropriately with all others to the extent necessary to carry out simple tasks.  [Plaintiff] can handle simple, repetitive, work-related stress in that he can make occasional decisions, directly related to the performance of simple tasks, in a position with consistent job duties, that does not require him to supervise or manage the work of others.

*See id.* at 24.

In her Report-Recommendation, Magistrate Judge Dancks concluded that the ALJ properly evaluated Dr. Grassl's opinion both in coming to her RFC determination and in finding that Plaintiff's learning disorder did not meet Listing 12.11.  *See generally* Dkt. No. 18 at 9-18. With respect to the ALJ's Step Four analysis, Magistrate Judge Dancks noted that the ALJ considered Drs. Grassl's, Weitzen's, and Haus's opinions in evaluating potential limitations that Plaintiff's mental impairments may have imposed.  *See id.* at 10.  Additionally, she noted that the ALJ "reviewed Plaintiff's treatment notes in detail, as well as Plaintiff's school records." *See id.*  Magistrate Judge Dancks referenced Dr. Grassl's reported findings, including that Plaintiff was appropriately dressed and well groomed, had good eye contact, demonstrated coherent and goal-directed thought processes with no evidence of delusions, hallucinations, or paranoia, socialized with friends, was close with his family, and could dress, bathe, and groom himself.  *See id.*  She also noted, as the ALJ did, that Dr. Grassl found Plaintiff had impaired attention and concentration due to a learning disability in math, showed impaired memory skills due to a seizure disorder, and his intellectual functioning was "borderline, with a somewhat limited general fund of information."  *See id.*

Magistrate Judge Dancks remarked that the ALJ found Dr. Grassl's overall opinion "somewhat persuasive" as it was consistent with her examination results but the overall record did not support the marked mental limitations in Plaintiff's work functioning that Dr. Grassl described.  *See id.* at 11.  Magistrate Judge Dancks pointed to the ALJ's acknowledgement that Plaintiff's school records demonstrated some learning difficulties, but he had not required any mental health treatment, and other records showed that he exhibited a normal mood, affect, and behavior, and he denied a wide range of symptoms.  *See id.*  She further noted that the ALJ relied upon Drs. Weitzen's and Haus's opinions "only after evaluating their supportability and consistency with Plaintiff's school and treatment records."  *See id.* at 12.

Magistrate Judge Dancks responded to Plaintiff's argument that the ALJ improperly evaluated Dr. Grassl's opinion as being "without merit."  *See id.* at 13.  She stated, "[a]s noted above and in accordance with regulations, the ALJ was required to explain how she considered the supportability and consistency factors for a medical source's opinions . . . in the decision," and she "did that here."  *See id.*  Relatedly, Magistrate Judge Dancks asserted that the ALJ did not ignore or "cherry-pick" evidence that supported her decision.  *See id.*  Rather, she found that the ALJ had properly carried out her responsibility to review all of the medical and other evidence before her, resolve any inconsistencies therein, and make a determination consistent with the evidence as a whole.  *See id.*  Magistrate Judge Dancks then concluded that the ALJ had properly considered the evidence in accordance with the regulations, and she had reasonably relied on Drs. Weitzen's and Haus's assessments and the overall record.  *See id.*

As Plaintiff highlights in his brief, Magistrate Judge Dancks stated that there was evidence that he had a learning disorder that caused him to have limitations in mental functioning.  *See id.* at 14.  Although Dr. Grassl assigned some marked restrictions to his mental

- 8 -

abilities, Magistrate Judge Dancks noted that Drs. Weitzen and Haus found, based upon the

entirety of the record evidence, that Plaintiff was not significantly limited in his ability to carry

out simple, short instructions, to remember locations and work-like procedures, to sustain an

ordinary routine without special supervision, and could make simple work-related decisions and

work in close proximity to others without being distracted by them. *See id.*  Magistrate Judge

Dancks remarked that those opinions were supported by and consistent with Plaintiff's school

records and the medical records from his treatment providers. *See id.*  She also noted that, as a

general matter, moderate limitations – such as those Drs. Weitzen and Haus had found – are not

an impediment to the ability to perform gainful activity, particularly when an RFC limits a

claimant to unskilled, routine work. *See id.* at 15 (citing *Zabala v. Astrue*, 595 F. 3d 402, 410

(2d Cir. 2010); *Melisa G. v. Berryhill*, No. 3:18-CV-508 (DJS), 2019 WL 2502726, at *5

(N.D.N.Y. June 17, 2019) (holding "moderate limitations are not prohibitive of performing

unskilled work.")).  Thus, Magistrate Judge Dancks concluded that the ALJ had identified

substantial evidence to reasonably conclude that Plaintiff's mental impairments did not prevent

him from working in unskilled positions consisting of simple and routine tasks and occasional

social interaction. *See id.*

Magistrate Judge Dancks also found for these reasons that the ALJ had properly

determined at Step Three that Dr. Grassl's opinion was only somewhat persuasive. *See id.* at 17.

She then concluded that the substantial evidence in the record supported the determination that

Plaintiff had only moderate or less limitations in certain areas of mental functioning. *See id.*

Furthermore, Magistrate Judge Dancks opined that, after reviewing the entire record, Drs.

Weitzen and Haus each found that Plaintiff had mild limitations in understanding,

remembering, and applying information, no limitations in interacting with others, and moderate

limitations in concentration, persistence, or maintaining pace, and moderate limitations in adapting or managing oneself.  *See id.* at 18.  Therefore, she concluded that the substantial evidence supported the ALJ's determination that Plaintiff did not meet the Paragraph B criteria of Listing 12.11.  *See id.*

Plaintiff objects to Magistrate Judge Dancks's conclusion that the ALJ correctly evaluated Dr. Grassl's opinion evidence.  *See* Dkt. No. 19 at 1.  According to Plaintiff, Magistrate Judge Dancks conducted her own post-hoc analysis and rationalization of the consistency factor – citing excerpts from Plaintiff's educational records and mental examination findings for support – and ultimately determined that Plaintiff's argument that the ALJ improperly evaluated Dr. Grassl's opinion was without merit.  *See id.* at 2.  Plaintiff contends that Magistrate Judge Dancks "cannot cure the defects in the ALJ's shoddy analysis by citing to some evidence she believes provides support for the ALJ's conclusions."  *See id.*  Plaintiff points to each of the findings in Dr. Grassl's report.  *See id.* at 2-3.  Plaintiff argues that the limitations that Dr. Grassl assessed are based on diagnoses of "specific learning disorder, rule out major neurocognitive disorder due to seizure disorder," rather than a mental impairment with symptoms that might be lessened with therapy or other mental health treatment.  *See id.* at 3.  Plaintiff further asserts that the ALJ's analysis does not specify what treatment would presumably lessen the severity of his marked limitations in his ability to understand, remember, and apply complex directions and instructions, sustain concentration and perform a task at a consistent pace, and sustain an ordinary routine and regular attendance at work due to his learning disorder.  *See id.*  Plaintiff notes that his symptoms have persisted despite more than a decade of special education services.  *See id.*

Plaintiff also contends that the ALJ engaged in "improper cherry picking" from Dr. Grassl's opinion because she only failed to adopt the marked restrictions while simultaneously crediting the moderate limitations. *See id.* at 4. "Because the ALJ engaged in improper cherry picking by crediting only the moderate limitations but rejecting the marked limitations assessed by Dr. Grassl (despite the support of the record as detailed below), her RFC is not supported by substantial evidence." *See id.* Plaintiff argues that cherry-picking is particularly troublesome, and the Social Security Administration cannot simply ignore its own rules and regulations out of convenience. *See id.* at 4-5. According to Plaintiff, the outcome of his claim may well have been different had the ALJ adhered to the Administration's own regulations and credited Dr. Grassl's opinion. *See id.* at 5. Thus, Plaintiff contends that remand "is required as a matter of law" because "the ALJ erroneously rejected disabling, marked limitations identified by Dr. Grassl." *See id.*

A review of the record demonstrates that the ALJ did not "cherry pick" evidence that opposed Dr. Grassl's opinion, nor did she disregard portions of the record that supported her opinion and Plaintiff's application for benefits. The Court finds that it is clear from the record that the ALJ considered the consistency and supportability of Dr. Grassl's opinion, based on her one single examination of Plaintiff and at which time she recorded many of his self-reported issues, with the record as a whole. The ALJ explicitly considered Plaintiff's school records, subjective complaints, physical medical records from both his treating physicians and the Agency's examiners, and mental medical records and opinions from Drs. Weitzen and Haus, among other evidence, in coming to her findings at Steps Three and Four and in finding Dr. Grassl's opinion only somewhat persuasive. Thus, after reviewing the record *de novo*, the Court finds that, for all the reasons stated herein as well as in Magistrate Judge Dancks's Report-

Recommendation, there is sufficient evidence in the record to support the ALJ's determinations.[1]

## IV. CONCLUSION

Having reviewed the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Dancks's Report-Recommendation, *see* Dkt. No. 18, is **ACCEPTED in its entirety**; and the Court further

**ORDERS** that, for the reasons Magistrate Judge Dancks stated in her Report-Recommendation and for the additional reasons stated herein, Defendant's motion for judgment on the pleadings, *see* Dkt. No. 17, is **GRANTED,** and Plaintiff's motion for judgment on the pleadings, *see* Dkt. No. 14, is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated:  January 6, 2023
             Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge

---

[1] The Court has reviewed those parts of the Report-Recommendation to which Plaintiff did not object for clear error and has found none.